IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| BRITTANY MAY, ERIKA RANCK, LAUREN TURNER, and STEPHEN THOMAS, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>FIVE GUYS ENTERPRISES, LLC,<br><br>    Defendant. | Case No.: 1:23-cv-00029 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASS**

Plaintiffs move for entry of an order granting final approval of this proposed class action settlement and certifying the settlement class. For the reasons set forth below, Plaintiffs respectfully request that the Court, after the final approval hearing scheduled for July 12, 2024, grant this motion, grant Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiffs, and enter a final judgment dismissing this case.

## I. Introduction

Plaintiffs, by and through the undersigned Settlement Class Counsel,[1] on behalf of themselves and the Settlement Class, respectfully submit this Memorandum of Law in support of their motion pursuant to Federal Rule of Civil Procedure ("Rule") 23(e) requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Settlement

---

[1] The Court appointed (1) Ryan D. Maxey of Maxey Law Firm; (2) David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC; and (3) M. Anderson Berry of Clayeo C. Arnold, A Professional Corp., as Class Counsel. (ECF No. 23 ¶ 2).

1

Agreement ("S.A.") (ECF No. 21-1) and for certification of the Settlement Class.[2]

If approved, the Settlement will successfully resolve the claims of 37,862 individuals nationwide who were notified of a security incident that Five Guys announced on or around December 29, 2022 (the "Security Incident"). The Settlement brings meaningful resolution and significant benefits to the Settlement Class without requiring further delay, risk, and expense. As discussed below, the Settlement calls for Defendant to establish a non-reversionary Qualified Settlement Fund of $700,000 ("Settlement Fund") for the benefit of eligible Class Members. Defendant also has committed to maintain substantial business practice changes in relation to its network and data security. Further, Defendant, through the Settlement Fund, will pay all costs of notice and administration ($92,703.13 incurred to date). **Exhibit 1**, Declaration of Sara Rugg of Angeion Group Regarding Settlement Administration ("Rugg Decl.") ¶ 19.

On January 4, 2024, the Court preliminarily approved the Settlement, finding that the Court "will likely be able to approve the proposed Settlement as fair, reasonable, and adequate." (ECF No. 23) ("Preliminary Approval Order") ¶ 1. The Court-ordered Notice Plan has since been executed; nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. The Settlement Class's reaction to the Settlement has been overwhelmingly positive. Of the 37,862 individual potential Class Members who were sent Notice,

---

[2] Unless otherwise defined, all capitalized terms have the meanings set forth in the Settlement Agreement or in the Declaration of David K. Lietz in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Lietz Decl.") (ECF No. 21-3) and the Declaration of Ryan D. Maxey in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiffs ("Decl. in Support of Fees, Expenses, and Service Awards") (ECF No. 25-1). Both Declarations are an integral part of this submission and, for the sake of brevity herein, Plaintiffs respectfully refer the Court to the Declarations for a detailed description of, inter alia: the procedural history of the Action and the claims asserted, the negotiations resulting in the Settlement and the risks of continued litigation.

only two (2) have timely requested exclusion and none have submitted timely objections. This response weighs in favor of final approval.

For the reasons detailed below, Plaintiffs and Class Counsel respectfully submit that the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiffs request that the Court finally approve the Settlement, certify the settlement class, grant Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiffs, and enter a final judgment dismissing this case.

## II.　Summary of the Action and Settlement

Plaintiffs respectfully refer the Court to their Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 21) and their Memorandum of Law in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiffs (ECF No. 25) for a thorough recitation of the substantive and procedural background of this litigation. For the purposes of final approval, Plaintiffs highlight the following:

### A.　Background

Plaintiffs allege that on or about December 29, 2022, Defendant announced the Security Incident, during which the personally identifiable information ("PII") of 37,862 individuals was potentially compromised. Soon after Plaintiffs filed their Consolidated Class Action Complaint, the Parties, by and through their respective counsel, began discussing the possibility for early resolution. The Parties agreed that an early resolution was warranted. Over the next few months, the Parties engaged in extensive arm's length settlement negotiations. Negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and

3

weaknesses of Plaintiffs' claims and Defendant's defenses. Class Counsel were in a well-informed position to mediate before Judge John W. Thornton (Ret.) and reach the very favorable Settlement before the Court.

**B. Terms of the Settlement**

If the Settlement receives final approval, the $700,000 non-reversionary Qualified Settlement Fund established by Defendant will be used to:

1) provide up to $400.00 per person reimbursement of unreimbursed costs or expenditures incurred by a Class member in responding to notice of the Security Incident that were incurred between September 17, 2022 and the Claims Deadline, as a result of the Security Incident ("Ordinary Losses"), including, but not limited to, costs associated with accessing or freezing/unfreezing credit reports with any credit reporting agency and other miscellaneous expenses incurred related to any Ordinary Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and credit monitoring or other mitigative costs;

2) for Settlement Class Members with Ordinary Out-of-Pocket Losses, provide payment for up to four (4) hours of lost time spent remedying issues related to the Security Incident, calculated at the rate of Twenty-Five Dollars and Zero Cents ($25.00) per hour;

3) provide reimbursement of up to $6,500 per person for unreimbursed costs or expenditures incurred by a Settlement Class member that are fairly traceable to the Security Incident, and are losses that are not already covered by one or more of the normal reimbursement categories ("Extraordinary Out-of-Pocket Losses");

4) for Settlement Class Members with Extraordinary Out-of-Pocket Losses, provide payment for up to three (3) additional hours of time spent remedying issues related to the Security

Incident, calculated at the rate of Twenty-Five Dollars and Zero Cents ($25.00) per hour;

5) in lieu of submitting claims for reimbursement of Ordinary or Extraordinary Out-of-Pocket Losses and/or lost time, provide an Alternative Cash Payment of $150, subject to a *pro rata* increase or reduction based on the number of valid claims submitted; and

6) for Settlement Class Members who reside in California, an additional cash payment of $100 in recognition of their statutory rights, subject to upward or downward proration.

In addition to the cash payments offered, each Settlement Class Member is eligible to enroll in a total of two (2) years of identity theft protection and credit monitoring services, the cost of which will be paid for out of the Settlement Fund.

In addition to the monetary relief and credit monitoring services provided, Defendant has committed, for a period of three (3) years following the execution of the S.A., to pay for, implement, and continue business practices related to network and data security.

Based upon their extensive experience in complex litigation and data privacy, Class Counsel believe that the $700,000 Settlement Fund will be ample to pay the claims of Settlement Class Members. However, if there are insufficient monies to pay all claims, claims for out-of-pocket losses and lost time will be reduced on a *pro rata* basis. If monies remain in the Settlement Fund after the payment of all claims, attorneys' fees, costs, expenses, and service awards to the Class Representatives, the remaining funds will be used to increase the alternative cash payments *pro rata* until all monies are consumed. No monies will revert to Defendant.

In all, the total settlement value is greater than the $700,000 that Defendant is paying to create the Qualified Settlement Fund and for costs of notice and claims administration.

### III.     Preliminary Approval and Notice

On December 21, 2023, Plaintiffs moved the Court to grant preliminary approval of the

Settlement, approve the proposed Notice Plan, direct notice be given to the Settlement Class, and Schedule a Final Approval Hearing. (ECF No. 20). On January 4, 2024, the Court granted Plaintiffs' motion. (ECF No. 23). Pursuant to the Preliminary Approval Order, the Settlement Administrator implemented the Notice Plan, disseminating notices to 37,862 potential members of the Settlement Class via U.S. mail. *See* Rugg Decl. ¶¶ 5-9. Notice was also provided via an internet website. *Id*. ¶¶ 11-12.

Notice instructed Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Defendant; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. (ECF No. 21-1 at 50-65). The deadline for Class Members to exclude themselves or object to the proposed Settlement passed on May 6, 2024, (ECF No. 23 at 10), and only two (2) exclusion requests and no objections have been received to date. Rugg Decl. ¶¶ 17-18. The claim deadline was May 6, 2024, and approximately 2,425 claims have been received to date. *Id.* ¶ 15.

### IV. The Settlement Merits Final Approval by the Court

**A. The Notice to Settlement Class Members was Sufficient.**

"[T]he adequacy of the notice [of a class action settlement] has both a constitutional and a procedural component." *McAdams v. Robinson*, 26 F.4th 149, 157 (4th Cir. 2022). "To bind an absent class member, notice to the class must provide 'minimal procedural due process protection.'" *Id.* (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)). "'The [absent class member] must receive notice plus an opportunity to be heard and participate in the litigation.'" *Id.* (quoting *Philips Petroleum Co.*, 472 U.S. at 812). "That notice must be 'reasonably

calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

"On the procedural front, Federal Rule of Civil Procedure 23(e) governs notice to absent class members." *Id.* "It requires 'direct notice in a reasonable manner to all class members who would be bound by the proposal.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(1)(B)). "But it doesn't specify what the notice must say." *Id.* "Rather, the notice need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). "Put another way, 'Rule 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Id.* (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015)).

Here, the notice "provided Class Members with, among other things, details regarding the nature of this lawsuit, the terms of the Settlement Agreement, the release of all claims under both state law and federal law, information regarding objecting to the proposed settlement, and the fairness hearing." *Boger v. Citrix Sys., Inc.*, No. 19-CV-01234-LKG, 2023 WL 3763974 (D. Md. June 1, 2023) (approving notice); *see generally* (ECF No. 21-1 at 50-65).

The notice was issued in the manner outlined in the Preliminary Approval Order. *See* Rugg Decl. ¶¶ 7-8. On February 05, 2024, Angeion caused the Postcard Notice to be mailed via USPS first class mail, postage prepaid to the 37,862 Class Members. *Id.* ¶ 7. As of June 13, 2024, the USPS had returned 717 of the initial Notices with a forwarding address; Angeion updated the Class List for these records and re-mailed Notice to these 717 records. *Id.* ¶ 8. As of June 13, 2024, a

7

total of 8,938 Notices mailed had been returned by the USPS as undeliverable without a forwarding address; Angeion conducted address verification searches ("skip traces") in an attempt to locate updated addresses; of the records subjected to a skip trace, a new address was located for 6,123 of them; Angeion updated the Class Member database and re-mailed Notices to the 6,123 Class Members located via this process; of the re-mailed Notices, none had been returned by the USPS a second time. *Id.* ¶ 9.

On March 20, 2024, Angeion caused a Reminder Postcard notice to be mailed via USPS first class mail, postage prepaid to the 35,012 Class Members whose initial notice was not returned as undeliverable and no updated address was found. *Id.* ¶ 10.

On January 10, 2024, Angeion established the following website dedicated to this Settlement: www.fgdatasettelement.com ("Settlement Website"). *Id.* ¶ 11. The Settlement Website contains downloadable versions of the Claim Form, Long-Form Notice, Settlement Agreement, and Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval. *Id.* The Settlement Website also has a "Frequently Asked Questions" page which provides Class Members with answers to common inquiries about the Settlement, and a "Contact Us" page which provides Class Members with the mailing address, phone number and email address to contact the Settlement Administrator. *Id.*

On February 5, 2024, Angeion also established a toll-free hotline dedicated to this Settlement to further apprise Class Members of their rights and options in the Settlement: 1-833-657-4055. *Id.* ¶ 13. The toll-free hotline utilizes an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. *Id.* Class Members may also leave a message for the Settlement Administrator, provide updated information, or ask additional questions and Angeion

will call them back. This hotline is accessible 24 hours a day, 7 days a week. *Id.*

These facts confirm that notice was distributed in a reasonable manner to all class members who would be bound by the settlement and satisfied the Constitution's Due Process requirements. *See, e.g.*, *Boger*, 2023 WL 3763974, at *12 (approving notice where "the Settlement Administrator sent Notice via the United States Postal Service to 526,544 Class Members for which mailing address data was available" and "administered a settlement website and a toll-free number, through which the Class Members could obtain additional information about the Settlement"); *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 766 (D. Md. 2022) (approving notice where it "was either mailed or emailed to each class member, and the administrator also set up a dedicated website and toll-free number for class members to access or call.").

## B. The Settlement Meets the Standards for Final Approval Under Rule 23(e)

"Per Federal Rule of Civil Procedure 23(e), a class action may only be settled with the court's approval." *Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *4 (E.D. Va. Dec. 18, 2020) (Payne, J.) (citing Fed. R. Civ. P. 23(e)). "If the settlement proposal would bind all class members, a court may only approve the settlement proposal after it holds a hearing and subsequently finds that the settlement proposal is fair, reasonable, and adequate." *Id.* (citing Fed. R. Civ. P. 23(e)(2)).

> In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:
>
> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
>     (C)  the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e) (3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.* (citing Fed. R. Civ. P. 23(e)(2)).

"Nevertheless, '[t]he primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations.'" *Id.* (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)). "In the Fourth Circuit, the Rule 23(e) (2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement." *Id.* (citing *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009)); *see, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18MD2836, 2023 WL 6871635, at *3-6 (E.D. Va. Oct. 18, 2023) (Smith, J.) (applying the *Jiffy Lube* test in granting final approval).

### 1. Fairness

"Under the fairness prong of the Jiffy Lube test, the court must assess the procedural fairness of the settlement negotiations." *Galloway*, 2020 WL 7482191, at *3 (citing *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. at 254. "The relevant factors to evaluate the fairness of the settlement negotiations are '(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the

10

experience of counsel.'" *Id.* (quoting *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 571 (E.D. Va. 2016)).

### a. The posture of the case at the time settlement was proposed.

Although Defendant had not yet filed a motion to dismiss, by the time the parties mediated, Class Counsel, who are experienced in prosecuting data breach class actions, had a clear view of the strengths and weaknesses of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. **Exhibit 2**, Declaration of Co-Class Counsel Ryan D. Maxey ("Maxey Decl.") ¶ 2. This supports the fairness of the settlement. *See, e.g.*, *In re Novant Health, Inc.*, No. 1:22-CV-697, 2024 WL 3028443, at *6 (M.D.N.C. June 17, 2024) (deeming this factor satisfied where the parties negotiated a settlement while the court was evaluating a second motion to dismiss); *Pierce v. Statebridge Co., LLC*, No. 1:20CV117, 2021 WL 1711784, at *2 (M.D.N.C. Apr. 29, 2021) (deeming this factor satisfied where "Plaintiff's Counsel and Defendant's Counsel are both experienced in complex litigation, including class action litigation" and "had 'a clear view of the strengths and weaknesses' of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement") (citation omitted); *Hinkle v. Matthews*, No. 2:15-CV-13856, 2018 WL 6004680, at *2 (S.D.W. Va. Nov. 15, 2018) (deeming this factor satisfied where "Plaintiff's Counsel and Defendant's Counsel, who are both experienced in prosecuting complex class action claims such as these, had 'a clear view of the strengths and weaknesses' of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement.") (citation omitted).

### b. The extent of discovery that had been conducted.

Prior to filing and during this action, Class Counsel investigated information available

11

online related to the Security Incident, including reviewing reports that Defendant filed with various authorities related to the Security Incident. Maxey Decl. ¶ 3. Prior to mediation, Plaintiffs requested and obtained from Defendant information about (i) the number of persons impacted by the Security Incident, including the number of such persons who were California residents; (ii) the types of information impacted by the Security Incident; (iii) how Defendant acquired the information; (iv) whether the information was encrypted; (v) the forms in which Defendant notified impacted persons of the Security Incident; (vi) how and when the Security Incident occurred, including the technical details and the identity of the perpetrator; (vii) whether forensic reports were prepared; (viii) Defendant's communications with law enforcement related to the Security Incident; (ix) the extent to which impacted persons took advance of Defendant's offer to provide complimentary identity monitoring; (x) Defendant's efforts to address the Security Incident, including any remediation of Defendant's systems; (xi) Defendant's efforts to monitor for misuse of the information; (xii) Defendant's communications with the perpetrator; and (xiii) Defendant's insurance coverage information. *Id.* ¶ 4. This supports the fairness of the settlement. *See, e.g.*, *In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where the case settled before formal discovery but the defendant disclosed information about data sharing to impacted individuals and authorities, class counsel gathered publicly available information, the defendant provided contact information for class members to the settlement administrator, and the parties engaged in limited, informal discovery for settlement purposes).

        c.        **The circumstances surrounding the negotiations.**

The parties mediated this case before a retired judge, John W. Thornton. Maxey Decl. ¶ 4. After the June 2023 mediation, and over the course of a month, the parties negotiated a term sheet outlining the settlement terms. *Id.* In September 2023, Plaintiffs sent Defendant a draft 38-page

formal settlement agreement. *Id.* Over the following two (2) months, the parties negotiated the final details of the S.A. *Id.* The S.A. was fully executed on December 6, 2023. *Id.* This supports the fairness of the settlement. *See, e.g.*, *In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where "[m]ediation was conducted by an independent mediator and was a collaborative process").

### d. The experience of counsel.

As explained in the Lietz Declaration (filed with the preliminary approval motion), "Class Counsel have led some of the country's most complex civil litigation; have been recognized by courts and national publications for our knowledge and experience in privacy and data breach cases; and are responsible for groundbreaking data breach settlements, including in settlements approved in this judicial district." Lietz Decl. ¶ 2; *see generally id.* ¶¶ 3-18. This supports the fairness of the settlement.

### 2. Adequacy

"Under the adequacy prong of the *Jiffy Lube* test, the court assesses the substantive adequacy of the settlement agreement." *Galloway*, 2020 WL 7482191, at *4 (citing *Brown*, 318 F.R.D. at 571). "The relevant factors to evaluate the adequacy of the settlement are '(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.'" *Id*. (quoting *Brown*, 318 F.R.D. at 573).

### a. The relative strength of the plaintiffs' case on the merits.

Because the law surrounding data breaches is still developing, it is challenging to evaluate

13

the likelihood of Plaintiffs prevailing at trial. Moreover, Plaintiffs' claims have not been tested through litigation discovery and dispositive motions. This supports the adequacy of the settlement. *See, e.g.*, *In re Novant Health, Inc.*, 2024 WL 3028443, at *6 ("The law surrounding data privacy and the surreptitious sharing of user data is still developing, making it challenging for the parties to evaluate the likelihood of prevailing at trial."); *Robinson v. Carolina First Bank NA,* No. 7:18-CV-02927-JDA, 2019 WL 719031, at *10 (D.S.C. Feb. 14, 2019) (deeming this factor satisfied where "Defendant has not had the opportunity to test Plaintiff's legal claims through litigation discovery and dispositive motions").

b. **The existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial.**

Here, there is no dispute that the Security Incident occurred. Regarding difficulties of proof as to other issues in this action, such as whether or not the Security Incident resulted from Defendant's negligence and whether or not Plaintiffs' alleged damages are cognizable under applicable law, it is simply unknown how future litigation may have impacted the quality of the Settlement. *See Robinson,* 2019 WL 719031, at *10 (analyzing this factor and reasoning that "while Plaintiff is confident in the strength of her case, it is unclear to what extent litigation may present issues that underscore the desirability of this settlement").

c. **The anticipated duration and expense of additional litigation.**

Had this action not settled, the parties would likely have litigated a motion to dismiss. If the motion to dismiss were not granted, the parties would have engaged in discovery, including expert discovery, followed by motions for class certification and summary judgment. If a class were certified and summary judgment denied, the action would have proceeded to and through trial. Given the rapidly evolving law in data breach cases, and that no data breach cases have been

tried to date (to the knowledge of Class Counsel), it is reasonably possible that an appeal would have followed. Simply put, to continue this action to its end would have taken years and required substantial expense. This supports the adequacy of the settlement. *See, e.g.*, *In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where "lengthy discovery, including the deposing of expert witnesses on damages, motions for summary judgment, and a motion for class certification would occur before final resolution could take place"); *Feinberg*, 610 F. Supp. 3d at 768 (deeming this factor satisfied where "the risk of appeal—and its attendant costs—was particularly acute in a case, such as this one, that presents a novel question"); *Robinson*, 2019 WL 719031, at *10 (deeming this factor satisfied where "a case such as this, a fully contested class action lawsuit would be expected to take significant time to resolve at the District Court level and additional time would result from any appeals. Likewise, the expenses for such a complex case, to include the completion of merits and expert discovery, class certification briefing, dispositive motions, trial, post-trial motions, and possible appeals would entail substantial expenses for all parties").

          **d.**    **The solvency of the defendants and the likelihood of recovery on a litigated judgment.**

Defendant's Media Fact Sheet, available on its website as of June 19, 2024, states that Defendant operates over 1,800 stores across North America, Europe, Asia, the Middle East, and Australia.[3] Plaintiffs have no reason to believe that Defendant's solvency would have impacted the likelihood of recovery on a litigated judgment. "However, given the other factors weighing in favor of the adequacy of the Settlement Agreement, this factor alone 'should not preclude final

---

[3] *See* https://www.fiveguys.com/-/media/public-site/files/media-fact-sheets/five-guys-media-fact-sheet-web.ashx (last visited June 19, 2024).

approval of the proposed Settlement.'" *In re Zetia (Ezetimibe) Antitrust Litig.*, 2023 WL 6871635, at *5; *see, e.g., In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where the defendant was "a large entity with substantial assets, it was insured for any losses incurred in this case, and there are no issues about [its]solvency that affected settlement"); *Galloway*, 2020 WL 7482191, at *9 (deeming this factor to have "no bearing" where class counsel did not provide argument but the court had "no reason to believe" there was a risk of insolvency).

### e. The degree of opposition to the settlement.

Of the 37,862 Settlement Class Members, only two (2) sought exclusion and none objected. Rugg Decl. ¶¶ 17-18. This reflects a low degree of opposition to the settlement, supporting the adequacy of the settlement. *See, e.g., In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where thirty-seven (37) of over 1.3 million class members sought exclusion and none objected); *In re Zetia (Ezetimibe) Antitrust Litig.*, 2023 WL 6871635, at *2 n.3, 5 (deeming this factor satisfied where sixteen (16) class members timely sought exclusion and none objected); *Haney*, 2023 WL 2596845, at *3 (deeming this factor satisfied where 190 of 350,000 class members sought exclusion and thirty-one (31) initially objected).

## V. CONCLUSION

Considering the factors bearing on the fairness and adequacy of the settlement, the Court should approve the notice to class members and find that the settlement meets the standard for final approval under Rule 23(e). Plaintiffs respectfully request the Court enter the order proposed by the Parties granting final approval and certifying the Settlement Class; grant Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiffs; and enter a final judgment dismissing this case.

Dated: June 22, 2024                    Respectfully Submitted,

/s/ *Steven T. Webster*
Steven T. Webster (VSB No. 31975)
**WEBSTER BOOK LLP**
300 N. Washington St., Suite 404
Alexandria, VA 22314
(888) 987-9991 (phone and fax)
swebster@websterbook.com

Patrick A. Barthle (*pro hac vice* application forthcoming)
**MORGAN & MORGAN COMPLEX BUSINESS DIVISION**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
pbarthle@ForThePeople.com

Ryan D. Maxey (*pro hac vice*)
**MAXEY LAW FIRM, P.A.**
107 N. 11th St. #402
Tampa, Florida 33602
(813) 448-1125
ryan@maxeyfirm.com

*Attorneys for Plaintiff May and the Proposed Class*

Raina Borrelli
**TURKE & STRAUSS, LLP**
613 Williamson Street #201
Madison, WI 53703
Tel: (608) 237-1775
Raina@turkestrauss.com

David K. Lietz (*pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, DC 20015
Phone: 866.252.0878
dlietz@milberg.com

*Attorneys for Plaintiff Ranck and the Proposed*

*Class*

M. Anderson Berry (*pro hac vice*)
Gregory Haroutunian (*pro hac vice*)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

Rachele R. Byrd (*pro hac vice*)
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Tel: (619) 239-4599 / Fax: (619) 234-4599
byrd@whafh.com

*Attorneys for Plaintiff Turner and the Proposed Class*

Laura Van Note, Esq.
**COLE & VAN NOTE**
555 12th Street, Suite 1725
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: lvn@colevannote.com

*Attorneys for Plaintiff Thomas and the Proposed Class*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

      /s/ *Steven T. Webster*
      Steven T. Webster (VSB No. 31975)
      WEBSTER BOOK LLP